STOKER *v.* GOLDEN.

May 3, 1954

No. 39130      63 Adv. S. 71      72 So. 2d 192

*J. W. Conger,* Winona; *Bell & McBee,* Greenwood, for appellant.

*Robertson Horton,* Winona, for appellee.

McGEHEE, C. J.

The appellee Columbus Golden, a farmer and Negro preacher, borrowed the sum of $2,000 on November 6, 1946, from the appellant O. S. Stoker, a farmer who fur-

nished money to his tenants and who made loans on real estate to other individuals. The testimony discloses that Mr. Stoker is a man "of great age," whose hearing and eyesight are impaired. The loan of $2,000 was evidenced by five promissory notes, due one, two, three, four and five years after date bearing 8% interest per annum payable annually, the notes being for $200, $300, $400, $500 and $600 respectively, and they provided for the payment of 10% on the amount thereof as attorney's fees if placed in the hands of an attorney for collection after maturity.

The above mentioned indebtedness of $2,000 was secured by a deed of trust on real estate which also secured the payment of future advances of money to the appellee, who thereafter received a total sum of $625 in advances. There is no dispute either as to the amount of the original loan or the amount of the advances. The appellee in his original bill for a discovery as to the amount due at the time of the filing thereof, and also in his testimony at the trial conceded that he received all of the sums with which he was charged. The sole issue involved in the suit is the amount that has been paid on the indebtedness.

The appellee testified at the trial that on November 6, 1947, he paid to the appellant the sum of $860, but for which he was given a receipt duly signed by the appellant for only the sum of $500. In addition to the receipt given him, the first note of $200 was surrendered and a credit of $140 was entered on the second note. About seven months later the parties stipulated on the back of the second note that the credit thereon of $140 was error and that the credit should have been only $40. The trial court allowed the appellee a credit for the $500 for which he held the receipt, which was admittedly signed by the appellant, but denied the appellee the additional credit of $360 which he claimed to have paid on November 6, 1947. An additional credit of $426.58 was endorsed on

the back of the second note on February 28, 1951, and this endorsement was duly signed by the appellant.

At the time of entering the credit last above mentioned the appellant also gave the appellee a separate receipt in the same amount. The appellee sought to claim credit for two payments of $426.58 on that day, but the chancellor found that the credit on the back of the second note and the separate receipt were for the same payment of money and he therefore denied the double credit claimed by the appellee.

On February 28, 1952, which was exactly one year after the $426.58 was paid, the appellee obtained from the appellant a statement of the amount of indebtedness still remaining unpaid on the original loan and for advances. The statement reads as follows:

"Feb. 28 - 1952
Collumbus Golden due $266.94 due and payable Nov. 6 - 1951 and $300.00 loand him Feb. 6 - 1952

O. S. Stoker."

The appellee testified that Mr. Stoker devoted an hour or more to the work of figuring up the balance due before he rendered him the above quoted statement; that there was taken into consideration on that occasion a payment of $475 paid on the indebtedness in cash that day, together with a payment of $300 in cash sometime in November of the previous year. The appellee testified that he kept a record of all of the payments that he made on the indebtedness and that this record which he offered in evidence included these payments of $300 and $475 respectively. The appellant kept no books on this indebtedness other than the entries that he made on the back of the first and second notes, except that he had one entry in a ledger whereby he charged the appellee with $300 of the total of $625 in advances. He also entered the several amounts of advances on the back of the second note. He testified that the way he kept up with what had been paid was by making the entry of the payment

on the reverse side of the note. But further stated that if the debtor asked him for a separate receipt he always gave him one. However, the appellant at first denied any knowledge of the receipt for $500 that he gave the appellee on November 6, 1947, and the genuineness of which he had to admit when the same was presented to him at the trial, but still denied having received the $500, and claimed that he received only the payment on that date of the principal of the first note and the annual interest. If he received the $500 as found by the chancellor on that date he should have credited $216 thereof as being in payment of the first note and the interest thereon and should have credited $144 thereof to the payment of one year's interest on each of the other four notes, and the remainder of the $500 on the principal of the second note. His $500 receipt was prepared on a typewriter and was duly signed by him.

The appellee holds no receipts for the $300 and $475 cash payments which he claimed to have made in November of 1951 and on February 28, 1952, respectively, but the written statement of the balance due as furnished by the appellant to the appellee on February 28, 1952, was expressly found by the chancellor to be approximately correct after crediting the indebtedness with the $300 and $475 cash payments last above mentioned.

It seems that the notes were kept in an envelope in the home of the appellant, and the appellee testified that these two payments were made, one "under the shed" of the appellant and the latter elsewhere than in his home.

The chancellor could have reasonably found that because of the advanced age and failing memory of the appellant he overlooked making the proper entries on the notes to cover these two payments.

The finding of fact by the chancellor which appears as a part of the record discloses that he spent considerable time, on the evening before rendering his opinion, in analyzing the testimony of the respective parties and

with the result that he entered a decree in favor of the appellant in the sum of $1,041.97, including principal and interest of 8% on the notes and 6% on the advances, to the date of the rendition of the final decree on December 10, 1952.

The amount of this decree does not include the 10% attorney's fee provided for in the note, but the fee was disallowed because of the fact that the appellee testified that subsequent to the statement rendered him on February 28, 1952, hereinbefore quoted, the appellant claimed that the amount due was several times the amount shown by that statement; that nothing had been paid except the first note and the $426.58; and for the further reason that the attorney for the appellee had written the appellant prior to the filing of the suit for discovery and had requested a statement of the exact balance due, including the interest of 6% on the advances and 8% on the notes, and had stated to the appellant in the letter that the appellee was ready to pay whatever balance was due and owing, and which letter was not replied to and no statement was furnished except as a discovery in answer to the bill of complaint. The notes were not placed in the hands of the appellant's attorney for collection until after the bill for discovery had been filed, and there was incorporated in the answer a cross bill seeking to enforce the collection of approximately $3,000, including attorney's fees and asking for a foreclosure of the deed of trust. The chancellor ordered the foreclosure of the deed of trust unless the indebtedness of $1,041.97 found by him to be due should be paid on or before January 15, 1953.

In conclusion it should be stated that the appellant's explanation of the statement rendered by him to the appellee as to the amount due on February 28, 1952, is that the figures thereon on $266.94 should have been $2,666.94 and that unless a *6* had been erased in the space between the last *6* and the *9* he must have made a mistake

and overlooked adding an additional *6*. The original statement is before us and we are unable to detect the slightest indication that anything has been erased in the figures between the $266 and the 94 cents, even though there is room for another *6* between the last *6* and the *9*. And we have considered the numerous decisions and the excerpts from text books cited by the appellant as to the weight that should be given to books and writings as compared to the recollection of witnesses, but the difficulty that we found in applying this law is that the appellant kept no books, and that while he contends that the appellee should have been able to produce receipts for the additional payments that he claimed to have made in cash on the indebtedness, the appellant is unwilling to recognize the validity of the $500 receipt that he gave the appellee or his written statement as to the amount of the balance due on the indebtedness.

We have reviewed this conflict in the testimony to a sufficient extent at least to show that we are not justified in saying that the chancellor's conclusion as to the balance due was manifestly wrong. This being true we are unable to reverse the decree appealed from.

Affirmed.

*Hall, Kyle, Holmes* and *Gillespie, JJ.,* concur.